**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
PATRICIA COSGROVE,                  )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
NEW SEABURY RESOURCES               )      **Civil Action No.**
    MANAGEMENT, INC.,               )      **1:05-cv-10791-GAO**
                                    )
            Defendant.              )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANT NEW SEABURY RESOURCES MANAGEMENT, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

A plaintiff should not be subject to disclosure of all of her personal financial information simply because she has exercised her right to file an employment discrimination lawsuit. Accordingly, Defendant should not be permitted to gain access to Plaintiff's financial records when those records contain information that is privileged and irrelevant to the claims and defenses in this case. The law is clear: a defendant's liability for lost wages is not reduced by a plaintiff's income from sources *other than subsequent employment*. Accordingly, in seeking financial information beyond Plaintiff's W-2 forms, which have been provided and which are the only documents necessary to demonstrate her earnings from subsequent employment, Defendant is attempting to go beyond the scope of discovery and to obtain private financial information that has no bearing on this case. Plaintiff respectfully submits that Defendant

should not be permitted to obtain this private and irrelevant information and requests that this Court deny Defendant's motion to compel.[1]

## ARGUMENT

**I.  AN EMPLOYMENT DISCRIMINATION PLAINTIFF'S RECEIPT OF BENEFITS FROM COLLATERAL SOURCES DOES NOT REDUCE A DEFENDANT'S LIABILITY FOR LOST WAGES.**

As set forth in Plaintiff's Motion and Memorandum to Quash Defendant's Subpoena to A.G. Edwards, Plaintiff does not dispute her obligation to mitigate her damages from her unlawful termination by seeking other employment, *Cummings v. Standard Register Co.*, 265 F.3d 56, 66 (1st Cir. 2001), or Defendant's entitlement to discovery on Plaintiff's *subsequent employment* after her termination from New Seabury. Accordingly, Plaintiff has provided her W-2 forms, which demonstrate her income from subsequent jobs. However, the law is clear that benefits and income that Plaintiff has received from sources other than subsequent employment are collateral sources that "may not be used to reduce that defendant's liability for damages." *Lussier v. Runyon*, 50 F.3d 1103, 1107 (1st Cir. 1995); *see also Reilly v. United States*, 863 F.2d 149, 161 (1st Cir. 1988) ("absent a statutory provision to the contrary, the amount of recovery from one responsible for another person's injury will not be reduced by the amount received from a collateral source by the plaintiff").

Defendant's only reason for seeking Plaintiff's tax returns and documents relating to her unemployment benefits is for the purpose of reducing its liability for

---

[1] For similar reasons, as set forth in Plaintiff's Motion and Memorandum to Quash Defendant's Subpoena to A.G. Edwards, Defendant's efforts to subpoena records of Plaintiff's investments with A.G. Edwards go beyond the scope of discovery, and Plaintiff requests that the Court quash the subpoena that Defendant has issued to A.G. Edwards as well.

2

Plaintiff's lost wages. Because the information contained in those documents is not relevant to that issue or even likely to lead to the discovery of relevant evidence, the information is not discoverable, and Defendant's motion to compel must be denied.

### A. Plaintiff's tax returns contain privileged and irrelevant information and are therefore beyond the scope of discovery.

Plaintiff's tax returns contain privileged information far beyond that which is relevant to this case, and Plaintiff has already provided all relevant tax information in the form of her yearly W-2 forms. Accordingly, Defendant's request for Plaintiff's tax returns in discovery is overly broad.

Both federal and state tax returns are privileged from disclosure based on the taxpayer's right to confidentiality. *See* M.G.L. c. 62C § 21; *Town Taxi, Inc. v. Police Commissioner of Boston*, 377 Mass. 576, 587-88 (1979). Accordingly, in ruling on discovery motions relating to tax returns, federal courts "impos[e] a high standard of relevancy before requiring parties to disclose such [documents]." *Id*. at 587 (citing *Mitsui & Co. v. Puerto Rico Water Resources Auth.*, 79 F.R.D. 72, 80-81 (D.P.R. 1978)).

This Court has applied the following two-pronged test in determining whether an individual's tax returns should be subject to disclosure: "first, the tax returns must be relevant to the action; second, the information contained in the returns must not be otherwise obtainable." *Buntzman v. Springfield Redevelopment Authority*, 146 F.R.D. 30, 32 (D. Mass. 1993) (citing *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988)). Additionally, "[t]he burden to show relevancy lies on the party

3

seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information." *Id*.

Defendant cannot satisfy either prong of the two-pronged test from *Buntzman*. First, Plaintiff's tax returns contain extensive information that is not relevant to this action, including information about investments and other non-employment-related income and benefits. As discussed above, this information is irrelevant here because it does not reduce Defendant's liability for Plaintiff's lost wages. Second, the only relevant information in Plaintiff's tax returns—information about Plaintiff's earnings from subsequent employment—is "otherwise obtainable" through Plaintiff's W-2 forms, and, indeed, Plaintiff has provided those forms. Accordingly, Defendant cannot overcome Plaintiff's privilege with respect to her tax returns, and its motion to compel disclosure of those tax returns must be denied.

**B.    Plaintiff's receipt of unemployment benefits does not reduce Defendant's liability for her lost wages, and her unemployment compensation records are therefore irrelevant and not subject to disclosure.**

Federal courts considering this issue have held repeatedly that an employer's liability for lost wages is not to be offset by unemployment benefits. In *Toro v. Sanchez*, for example, a district court in the First Circuit declined to deduct unemployment compensation from a back pay award in an employment discrimination case. 141 F. Supp. 2d 195 (D.P.R. 2001). The court's reasoning in *Toro* is convincing. Specifically, the court noted that the Supreme Court has recognized that "'the benefits received by employees under a state unemployment compensation act were plainly not earnings,'" 141 F. Supp. 2d at

4

198 (quoting *Marshall Field & Co. v. Labor Board*, 318 U.S. 253, 255 (1943)), and held that "unemployment compensation benefits are made to carry out an independent social policy and are therefore not to be considered 'interim earnings' deductible from back pay awards." *Id*. The court also concluded that, because "employers must contribute to unemployment funds regardless of whether they wrongfully discharged employees or caused the unemployment," it would "actually make the defendant-employer more than whole" to deduct unemployment compensation from back pay awards. *Id*. at 198-99. The court explained: "'If an employer who violates the law is allowed to use payments of unemployment compensation to offset its liability, it is put in a better position than an employer who does not violate the law but still pays its unemployment tax to the state.'" *Id*. at 199 (quoting Lee, Thomas W., *Deducting Unemployment Compensation and Ending Employment Discrimination: Continuing Conflict*, 43 Emory L.J. 325, 329 (Winter 1994)).

      The court's decision in *Toro* is consistent with Supreme Court precedent. Specifically, the Supreme Court has held that unemployment compensation need not be deducted from a back pay award, noting, as did the court in *Toro*, that payments to employees through an unemployment compensation program are "not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state." *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364 (1951). The Court also explained why not deducting unemployment benefits from back pay awards would *not* lead to a double recovery by plaintiffs, as Defendant argues here:

5

> To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given or should be given to collateral losses in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

*Id.* Several appellate courts have also affirmatively held that unemployment benefits should not be deducted from back pay awards. *See, e.g., Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 81-85 (3d Cir. 1983) ("[U]nemployment benefits should not be deducted from a Title VII back pay award."); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 627 (6th Cir. 1983) ("[U]nemployment benefits should not be offset against backpay awards" in Title VII cases.); *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 347 (9th Cir. 1982) ("We . . . hold that unemployment benefits received by a successful plaintiff in an employment discrimination action are not offsets against back pay award.").

Because any unemployment benefits that Plaintiff may have received are not relevant to the issue of damages in this case, that information is beyond the scope of discovery.[2] Accordingly, the Court should deny Defendant's motion to compel as to this information.

## CONCLUSION

The law is clear that Defendant's liability for Plaintiff's lost wages is not reduced by non-employment-related benefits and income that Plaintiff has

---

[2] Moreover, unemployment compensation information is designated as confidential by statute, M.G.L. c. 151A § 46 ("information secured pursuant to this chapter is confidential and for the exclusive use and information of the department in the discharge of its duties"), which provides yet another basis for its nondisclosure in this case.

6

received since her termination from New Seabury. As such, the only information on Plaintiff's tax returns that is at all relevant to the calculation of damages is information about her earnings at subsequent jobs. Plaintiff has provided that information in her yearly W-2 forms. Accordingly, Defendant has not met its burden of proving that it is entitled to overcome the privilege protecting tax returns from disclosure. As to documentation of unemployment benefits, that information is wholly irrelevant to the damages calculation here, because a defendant's liability for lost wages is not offset by unemployment compensation. For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to compel be denied.

> Respectfully submitted,
>
> PATRICIA COSGROVE,
> By her attorneys,
>
> __s/Shannon Liss-Riordan_____
> Shannon Liss-Riordan, BBO #640716
> Hillary Schwab, admitted *pro hac vice*
> PYLE, ROME, LICHTEN, EHRENBERG
>     & LISS-RIORDAN, P.C.
> 18 Tremont Street, 5th Floor
> Boston, MA 02108
> (617) 367-7200

Dated: May 10, 2006

### CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2006, I caused a copy of this document to be served by electronic filing on Howard I. Wilgoren, 6 Beacon Street, Suite 700, Boston, MA 02108, counsel for the defendant.

> __s/Shannon Liss-Riordan_____
> Shannon Liss-Riordan, Esq.