UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
PATRICIA COSGROVE,                  )
                  Plaintiff,        )
                                    )
        v.                          )
                                    )
NEW SEABURY RESOURCES              )    **Civil Action No.**
        MANAGEMENT, INC.,           )    **1:05-cv-10791-GAO**
                                    )
                  Defendant.        )
_____ )

**PLAINTIFF PATRICIA COSGROVE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Patricia Cosgrove moves this Court for an order granting partial summary judgment to Plaintiff as to Defendant New Seabury Resource Management, Inc.'s liability on Plaintiff's claim under the Family and Medical Leave Act (FMLA). This issue is straightforward: the FMLA required New Seabury to restore Cosgrove to her original position or an equivalent position when she returned from her maternity leave, and New Seabury did not satisfy this requirement. Specifically, though, prior to her leave, Cosgrove was offered and accepted a full-time, year-round position as Administrative Assistant in the Catering Sales Department, she was never placed in that position after her leave. Instead, she was given the monotonous and tedious job of scanning documents all day in a warehouse, where she spent most of the day in isolation. Under no interpretation of the FMLA can that job be deemed to be an equivalent position to Administrative

Assistant in the Catering Sales Department. Accordingly, Plaintiff is entitled to judgment as a matter of law in her favor on her FMLA claim.

## BACKGROUND

Plaintiff Patricia Cosgrove began working as an Account Executive at New Seabury Resources Management, Inc. (New Seabury) in April 1999 and was soon promoted to the position of Conference Sales Manager. Plaintiff's Statement of Material Facts ("SOF") ¶¶ 1-2. Cosgrove requested maternity leave in February 2003 pursuant to New Seabury's maternity leave policy, which allows employees to take twelve weeks of maternity leave under the FMLA, allows employees to extend their FMLA leave by using unused vacation and other leave time, pays eligible employees 60% of their weekly salary while on FMLA leave, and guarantees that an employee returning from FMLA leave will be "restored to the employee's original job, or to an equivalent job with equivalent pay, benefits, and other terms and conditions of employment." SOF ¶¶ 3-7. Though Cosgrove had anticipated that her leave would begin in July 2003, she was required to take leave starting in May 2003 because of complications in her pregnancy. SOF ¶¶ 7-8.

Shortly before Cosgrove went out on maternity leave, she was informed that her position as Conference Sales Manager was being eliminated. SOF ¶ 10. At that time, she was offered the position of Administrative Assistant for the Catering Sales Department. SOF ¶ 10. Cosgrove had earned $17 per hour as Conference Sales Manager, and she would be earning $12 per hour as Administrative Assistant for the Catering Sales Department. SOF ¶¶ 9, 11.

2

The position that Cosgrove was offered of Administrative Assistant for the Catering Sales Department was a full-time, year-round position. SOF ¶ 12. Her responsibilities as Administrative Assistant for the Catering Sales Department were to include: checking emails and telephone messages for that department; sending out wedding packages; distributing documents to and managing schedules of employees in the Catering Sales Departments; working with contracts, event orders, invoices and refunds for catering events; meeting with potential clients; and doing site visits. SOF ¶ 13. Cosgrove's office as Administrative Assistant for the Catering Sales Department would be located in the Country Club at New Seabury, and she would report to Jennifer Perry, Director of Catering Sales. SOF ¶¶ 14-15.

Cosgrove accepted the position of Administrative Assistant for the Catering Sales Department before she went on her maternity leave. SOF ¶ 17. However, she continued in her duties as Conference Sales Manager and at the pay rate for Conference Sales Manager until she went on maternity leave. SOF ¶ 18. While Cosgrove was out on leave, she received disability pay at 60% of her Conference Sales Manager salary, $17 per hour. SOF ¶¶ 19-20.

When Cosgrove returned from her maternity leave in October 2003, she was not restored to her position as Conference Sales Manager or to the position of Administrative Assistant for the Catering Sales Department. SOF ¶¶ 21-22. Instead, Cosgrove was given a substantially worse position: she was placed in a warehouse on New Seabury property and required to scan documents all day. SOF ¶¶ 23-30. Not only was the work monotonous and tedious, but Cosgrove

3

worked in isolation for most of the day. SOF ¶¶ 24, 28. In the warehouse, Cosgrove was required to share a dingy and dirty bathroom with her male co-workers. SOF ¶ 32. Moreover, for the first one to two weeks that Cosgrove worked there, the warehouse was not properly heated. SOF ¶ 35. Finally, there was no private place at the warehouse for Cosgrove to pump her breastmilk, and she was required to drive to the Country Club one or twice per day to pump breastmilk in a co-worker's office. SOF ¶ 33.

Cosgrove was never restored to the position that she had held before her maternity leave, and her employment at New Seabury was terminated on approximately October 31, 2003, shortly after her attorney wrote a letter New Seabury General Manager Stephen Brennan, informing him that New Seabury's actions toward Cosgrove were in violation of antidiscrimination laws. SOF ¶¶ 37, 38.

Cosgrove filed the complaint in this action in April 2005, alleging sex and pregnancy discrimination and retaliation under Title VII and Massachusetts antidiscrimination laws and a violation of the Family and Medical Leave Act, 29 U.S.C. § 2614. Cosgrove seeks reinstatement, lost wages and benefits, emotional distress damages, punitive damages, and attorneys' fees. In this motion, Cosgrove moves for summary judgment as to New Seabury's liability on her claim that New Seabury failed to restore her to her position or an equivalent position as required by the FMLA.[1] Cosgrove requests that the Court grant her

---

[1] Plaintiff alleges that Defendant's conduct violates the FMLA both (1) because New Seabury failed to restore her to her position or an equivalent position when she returned from leave and (2) because, in demoting and then terminating her, New Seabury retaliated against her

4

motion for summary judgment and order that the case proceed to trial on Cosgrove's discrimination and retaliation claims and on Cosgrove's damages under the FMLA.

## ARGUMENT

**I. BECAUSE THERE IS NO DENUINE ISSUE AS TO ANY MATERIAL FACT, COSGROVE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY FOR ITS VIOLATION OF THE FMLA.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. *See Council Of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 107 (1st Cir. 2006). Once the moving party has made a showing that there are genuine issues of material fact to be tried, the burden shifts to the non-moving party to raise triable issues of fact. *See id.*

Summary judgment may be granted to a plaintiff on the issue of a defendant's liability, leaving for trial only the issue of the damages to be awarded to the plaintiff for the violation. *See, e.g., Strachan v. Ashe*, 548 F. Supp. 1193, 1206 (D. Mass. 1982). Moreover, where the party moving for summary judgment has demonstrated the absence of genuine disputes of fact, courts are inclined to grant summary judgment on claims under the FMLA. *See, e.g., Bloom v. Metro*

---

for exercising her rights under the FMLA. Plaintiff seeks summary judgment only as to the former violation.

*Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1031 (8th Cir. 2006); *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 713 (6th Cir. 2003).

II. **NEW SEABURY VIOLATED THE FMLA IN FAILING TO RESTORE COSGROVE TO AN EQUIVALENT POSITION WHEN SHE RETURNED FROM LEAVE.**

Under the FMLA, an employee returning from maternity leave is entitled to return to "the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." 29 U.S.C. § 2614(a)(1); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998). An employer violates the FMLA if it fails to restore an employee to the same position or an equivalent position, regardless of the employer's intent or comparative treatment of other employees. *See* 29 C.F.R. § 825.220(b); *Wheeler v. Pioneer Developmental Services, Inc.*, 349 F.Supp.2d 158 (D. Mass. 2004) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer."). Indeed, in an FMLA case, "the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA. . ." *Hodgens*, 144 F.3d at 159.

Accordingly, where an employee has taken qualifying FMLA leave, the *only issue* is whether she was restored to the same or an equivalent position. Here, because it is undisputed that Cosgrove was not restored to her position as Conference Sales Manager or to the position of Administrative Assistant for the Catering Sales Department, SOF ¶ 22, the only issue before the Court is whether

6

the position into which she was placed was "equivalent" under the FMLA. Plaintiff submits that this issue may be decided as a matter of law.

Though the FMLA itself does not define the term "equivalent position," the regulations explain:

> An equivalent position is one that is *virtually identical* to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a) (emphasis added); *see also Watkins v. J & S Oil Co., Inc.*, 164 F.3d 55, 59 (1st Cir. 1998) (construing the "'equivalent' requirement to mean that which is substantially equal or similar. . ."). Notably, the law is clear that the replacement position must be "equivalent" as to both pay *and* working conditions, 29 U.S.C. § 2614(a)(1), and, therefore, the fact that the employee is being paid the same salary in the replacement position is not dispositive. *See, e.g., McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1004 (8th Cir. 2005) ("While the pay was the same, the [replacement] position had non-equivalent working conditions, privileges, perquisites, and status, and thus was not equivalent under the FMLA.").

As discussed below, Cosgrove's salary was substantially reduced when she returned from leave, from $17 per hour to $12 per hour. SOF ¶¶ 9, 36. However, even if Cosgrove's post-leave position is compared to the position that she accepted but did not start before she went on leave,[2] that of Administrative

---

[2] It should be noted that Cosgrove challenges her pre-leave demotion from Conference Sales Manager to Administrative Assistant as motivated by pregnancy and sex discrimination as well as being retaliatory for Cosgrove's complaints of discrimination and for her assertion of her

7

Assistant for the Catering Sales Department, it cannot be disputed that those positions had grossly disparate working conditions. First, as set forth in the accompanying Statement of Material Facts, the two positions had starkly different responsibilities: her duties as Administrative Assistant for the Catering Sales Department were varied and challenging and utilized her skills and experience; while her duties when she returned from leave involved only the repeated and monotonous scanning of documents day after day. SOF ¶¶ 13, 15, 23, 24. Second, the work scanning documents differed dramatically from the position of Administrative Assistant for the Catering Sales Department in that Cosgrove worked in isolation, while the Catering Sales Administrative Assistant position would have involved substantial interaction with co-workers and clients. SOF ¶¶ 13, 28, 30, 31. Third, the difference in Cosgrove's working environment is significant: she went from working in an office at the Country Club facility to working in a warehouse that was unheated for a portion of the time and contained only one unisex bathroom. SOF ¶¶ 14, 26, 27, 35.

In considering whether the changes in Cosgrove's working conditions constitute an FMLA violation, it is instructive to consider courts' interpretation what constitutes an adverse employment action for purposes of a federal employment discrimination claim. It is well settled that "'Title VII does not limit adverse job action to strictly monetary considerations.'" *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002) (quoting *Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). Instead, an adverse employment action "might be

---

rights under the FMLA. However, Cosgrove is not moving for summary judgment on those claims.

indicated by . . . a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal citations omitted); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (An adverse employment action includes "reassignment with significantly different responsibilities.").

Under this standard, the Second Circuit has held that a transfer of a junior high school teacher to a position as an elementary school teacher could constitute adverse employment action, even without a reduction of salary, because of the "radical change in the nature of the work [the plaintiff] was called upon to perform." *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980). Similarly, the Seventh Circuit has held that a lateral transfer from a library consultant position to a newly created position in the same library's reference unit constituted adverse action, where the work was less challenging and she lost the benefits of her own office, a telephone at her desk, printed business cards, and listings in professional publications as a library consultant.[3] *Collins*, 830 F.2d at 704; *see also Andujar v. Nortel Networks, Inc.*, 400 F.Supp.2d 306, 331 (D. Mass. 2005) (transfer to new position with lesser responsibilities may be sufficient evidence of adverse job actions); *cf. Acevedo Luis v. Zayas*, 419 F.Supp.2d 115, 123 (D.P.R. 2006) (Having "no one to supervise, no office, and

---

[3] Significantly, courts have granted summary judgment to plaintiffs as to liability for employment discrimination claims where the undisputed facts demonstrate a change in the employee's job responsibilities. *See, e.g., Simms v. City of New York*, 160 F. Supp. 2d 398, 406 (E.D.N.Y. 2001) (granting summary judgment to plaintiff on ADA claim and holding that employee had established adverse employment action as a matter of law where "[p]laintiff was removed from a position where he suppressed fires and conducted emergency rescue missions to a job that is essentially clerical").

9

no duties" could form the basis for conclusion that he had not "retained duties, perquisites and a working environment appropriate for his or her rank and title," for purposes of First Amendment retaliation claim).

Here, much more so than in *Rodriguez* and *Collins*, Cosgrove's responsibilities were dramatically reduced when she returned from leave, and essentially every other aspect of her job—work environment, interaction with others, level of stimulation—was changed for the worse. As such, it cannot be questioned that Cosgrove's position when she returned from maternity leave was not even close to "virtually identical" to her former position with respect to her "working conditions," as required by the FMLA. 29 C.F.R. § 825.215(a).

The benefits in Cosgrove's pre- and post-leave positions also differed in at least one significant way. The administrative assistant position that Cosgrove had been offered before her leave was designated as a full-time, year-round position. SOF ¶ 12. Accordingly, in that position, Cosgrove would have had job security and would not have been faced with the risk of a layoff at the end of the summer season. In contrast, Cosgrove was terminated from her position scanning documents in the warehouse in October 2003, purportedly as part of a layoff of employees holding seasonal positions.[4] SOF ¶ 37. Cosgrove was removed from a position in which she could have remained indefinitely to one that did not even last a month after she returned from her leave. Under no

---

[4] New Seabury contends that Cosgrove's termination was part of seasonal layoffs. Plaintiff disputes this and asserts that her termination was discriminatory and in retaliation for her discrimination complaints and her exercise of her FMLA rights. However, for purposes of this summary judgment motion, New Seabury's contention that she was laid off from a seasonal position may be taken as true.

10

construction of the FMLA could her transfer into a seasonal position from a year-round position be considered restoration to an "equivalent" position.[5]

Finally, though Cosgrove earned the same hourly rate in the warehouse position as she would have earned as Administrative Assistant for the Catering Sales Department, SOF ¶¶ 11, 36, her pay rate when she went out on leave was substantially higher. It is undisputed that, when she went on maternity leave, Cosgrove was earning $17 per hour. SOF ¶ 9. It is also undisputed that her 60% disability pay when she was on leave was based on that $17 per hour rate. SOF ¶¶ 19-20. However, when she returned from maternity leave, her salary was reduced to $12 per hour. SOF ¶ 36. Accordingly, in violation of the FMLA, Cosgrove was not returned to "an alternate position with equivalent pay" when she returned from her leave. 29 U.S.C. § 2614(a)(1).

The FMLA requires that an employer restore an employee returning from leave to the same or an equivalent position. In nearly every way, New Seabury's placement of Cosgrove in a warehouse scanning documents when she came back from maternity leave violated that requirement. Her responsibilities were completely changed. Her work environment went from the Country Club, where she would interact with clients and co-workers throughout the day and receive hands-on supervision, to an isolated warehouse, where she was required to work alone. The position she had been promised would have been year-round, and

---

[5]     Once again, the case law on adverse employment actions is instructive. The First Circuit has made clear that "[j]ob security is 'something of consequence,' the deprivation of which could constitute an adverse employment action." *Marrero*, 304 F.3d at 25 n.5 (quoting *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996)). Here, New Seabury deprived Cosgrove of job security by removing her from a year-round position and placing her in a seasonal position instead when she returned from leave.

the position into which she was placed was purportedly seasonal, resulting in her termination less than a month after she returned from leave. Finally, her salary when she went out on leave was $17 per hour, and her salary when she returned was only $12 per hour. Because the undisputed facts demonstrate that the position in which Cosgrove was placed when she came back from leave was not equivalent to her previous position in any way, Cosgrove is entitled to summary judgment as to New Seabury's violation of the FMLA.

## CONCLUSION

In transferring her from a varied and engaging job with multiple responsibilities and frequent interactions with clients and co-workers to one in which she performed the same rote task repeatedly all day every day and worked in isolation, New Seabury did not restore Cosgrove to a position "involv[ing] the same or substantially similar duties and responsibilities." 29 C.F.R. § 825.215(a). Moreover, where Cosgrove went on leave in a full-time, year-round position at $17 per hour and was restored to a seasonal position earning only $12 per hour, it cannot be disputed that she was not restored to a position with equivalent pay and benefits. Accordingly, for the foregoing reasons, Plaintiff Patricia Cosgrove respectfully requests that this Court grant summary judgment in her favor as to Defendant New Seabury's liability for a violation of the FMLA.

Respectfully submitted,

PATRICIA COSGROVE,
By her attorneys,


 s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, admitted *pro hac vice*
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
Dated:  June 9, 2006                (617) 367-7200

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, I certify that I conferred with counsel for the defendant regarding the subject of this motion and we were unable to narrow or resolve the issues.

 s/Hillary Schwab
Hillary Schwab, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2006, I caused a copy of this document to be served by electronic filing on Howard I. Wilgoren, 6 Beacon Street, Suite 700, Boston, MA 02108, counsel for the defendant.


 s/Hillary Schwab
Hillary Schwab, Esq.