**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
PATRICIA COSGROVE,                        )
                          Plaintiff,      )
                                          )
          v.                              )
                                          )
NEW SEABURY RESOURCES                     )          **Civil Action No.**
      MANAGEMENT, INC.,                   )          **1:05-cv-10791-GAO**
                                          )
                          Defendant.      )
_____ )

**PLAINTIFF PATRICIA COSGROVE'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO ISSUE TO BE TRIED IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff Patricia Cosgrove states that there is no issue to be tried as to the following material facts:

1.      Plaintiff Patricia Cosgrove began working as an Account Executive at New Seabury Resources Management, Inc. (New Seabury) in April 1999. Affidavit of Patricia Cosgrove, ¶ 2, Exhibit A to Affidavit of Hillary Schwab, Esq. Regarding Exhibits.

2.      Cosgrove was promoted to the position of Conference Sales Manager in approximately June 1999.  Ex. A (Cosgrove Aff. ¶ 3).

3.      New Seabury's Employee Handbook provides that employees are entitled to up to twelve weeks of leave under the Family and Medical Leave Act (FMLA) "[f]or the birth and care of the newborn child of an employee."  New Seabury Resources Management, Inc. Employee Handbook at 36, Exhibit B to Schwab Aff.

4.      New Seabury's Employee Handbook allows employees to extend their FMLA leave by using unused vacation and other leave time.  Deposition of Stephen Brennan, Jan. 18, 2006, at 137, Exhibit J to Schwab Aff.

5.      New Seabury's Employee Handbook also provides that, "[u]pon return from FMLA leave, an employee must be restored to the employee's original job, or to an equivalent job with equivalent pay, benefits, and other terms and conditions of employment."  Ex. B (Handbook at 38); *see also* Ex. J (Brennan Dep. at 132).

6.      New Seabury's Employee Handbook also provides that eligible employees receive 60% of their weekly salary while on maternity leave.  Ex. B (Handbook at 39).

7.      In February 2003, Cosgrove sent correspondence to the General Manager at New Seabury, Stephen Brennan, requesting maternity leave to begin on or about July 30, 2003, and her request for leave was approved.  Memorandum from Cosgrove to Brennan, dated Feb. 3, 2003, Exhibit C to Schwab Aff.; Ex. J (Brennan Dep. at 161-63); Ex. A (Cosgrove Aff. ¶ 5).

8.      Due to complications in her pregnancy, Cosgrove was required to begin her FMLA leave on approximately May 11, 2003.  Ex. A (Cosgrove Aff. ¶ 6); Note from Jean Talbert, M.D., Exhibit D to Schwab Aff.

9.      At the time of her leave, Cosgrove's title was Conference Sales Manager, and her rate of pay was $17 per hour.  Ex. A (Cosgrove Aff. ¶ 4); Ex. J (Brennan Dep. at 187-88).

10.     Shortly before Cosgrove went out on FMLA leave, in a meeting with General Manager Stephen Brennan, Jennifer Perry, Director of Catering Sales at New Seabury, and Roy Chase, Director of Food and Beverage at New Seabury, Cosgrove was told that the Conference Sales Manager position was being eliminated, and she was offered the position of Administrative Assistant for the Catering Sales Department.  Ex. A (Cosgrove Aff. ¶ 7); Ex. J (Brennan Dep. at 168-69).

11.     The pay rate for the Administrative Assistant position in the Catering Sales Department was $12 per hour.  Ex. A (Cosgrove Aff. ¶ 8); Ex. J (Brennan Dep. at 187-88).

12.     The Administrative Assistant position in the Catering Sales Department was a full-time, year-round position.  Ex. A (Cosgrove Aff. ¶ 9); Payroll Change Notice and New Hire Authorization, Exhibit E to Schwab Aff.; Ex. J (Brennan Dep. at 175).

13.     Cosgrove's responsibilities as Administrative Assistant for the Catering Sales Department were to include:  checking emails and telephone messages for that department; sending out wedding packages; distributing documents to and managing schedules of employees in the Catering Sales Departments; working with contracts, event orders, invoices and refunds for catering events; meeting with potential clients; and doing site visits. Administrative Assistant position description, Exhibit F to Schwab Aff.; Deposition of Patricia Cosgrove, Jan. 16, 2006, at 208-10, Exhibit K to Schwab Aff.; Deposition of Jennifer Perry, April 7, 2006, at 49-50, Exhibit L to Schwab Aff..

14.    In her position as Administrative Assistant for the Catering Sales Department, Cosgrove's office would be located in the Country Club building at New Seabury.  Ex. J (Brennan Dep. at 170).

15.    In her position as Administrative Assistant for the Catering Sales Department, Cosgrove would report to Jennifer Perry.  Ex. K (Cosgrove Dep. at 130).

16.    Stephen Brennan and Jennifer Perry explained to Cosgrove that they thought the position as Administrative Assistant for the Catering Sales Department would be a perfect fit for her because of her knowledge of the work being done in the Catering Sales Department and her familiarity with the Department's clients and the function rooms.  Ex. K (Cosgrove Dep. at 148-49); *see also* Ex. J (Brennan Dep. at 172).

17.    Cosgrove accepted the position as Administrative Assistant for the Catering Sales Department in early May 2003, to be resumed when she returned from her maternity leave.  Letter from Cosgrove to Brennan, dated May 2, 2003, Exhibit G to Schwab Aff.; Ex. A (Cosgrove Aff. ¶ 10); Ex. J (Brennan Dep. at 197-98); Ex. K (Cosgrove Dep. at 131, 165-66).

18.    However, Cosgrove continued in her duties as Conference Sales Manager and at the pay rate for Conference Sales Manager until she went on maternity leave.  Ex. A (Cosgrove Aff. ¶ 11); Emails between Cosgrove and Brennan, dated May 7, 2003, Exhibit H to Schwab Aff.; Ex. L (Perry Dep. at 69-70).

19.     Per New Seabury policy, Cosgrove received disability pay at 60%

of her salary while she was on leave.  Ex. B (Handbook at 39); Ex. J (Brennan

Dep. at 191).

20.     The pay rate used to calculate Cosgrove's disability pay during her

leave was the rate of $17 per hour.  Ex. J (Brennan Dep. at 191); Patricia

Cosgrove disability pay calculation, Exhibit I to Schwab Aff.; Ex. L (Perry Dep. at

69).

21.     Cosgrove returned to work at New Seabury on the day that her

leave elapsed, October 7, 2003.  Ex. K (Cosgrove Dep. at 191-93).

22.     Cosgrove was not restored to her position as Conference Sales

Manager or to the position of Administrative Assistant for the Catering Sales

Department when she returned from her FMLA leave.  Ex. A (Cosgrove Aff. ¶

12).

23.     Instead, Cosgrove was given the job of spending all day scanning

documents that New Seabury wanted converted to electronic files.  Ex. J

(Brennan Dep. at 200); Ex. K (Cosgrove Dep. at 197).

24.     The work scanning documents was monotonous, slow, and tedious.

Ex. A (Cosgrove Aff. ¶ 13); Ex. K (Cosgrove Dep. at 199).

25.     To scan the documents, Cosgrove was required to be located in a

warehouse on the New Seabury property where the boxes of documents to be

scanned were stored.  Ex. J (Brennan Dep. at 200-02); Ex. K (Cosgrove Dep. at

199).

26.     The warehouse was a typical warehouse, with machinery and equipment all around.  Ex. A (Cosgrove Aff. ¶ 14, photographs 1-2).

27.     In contrast, in the position of Administrative Assistant in the Catering Sales Department, Cosgrove would have been located at the Country Club building, a facility with offices, a meeting space, a dining space, and a golf shop.  Ex. J (Brennan Dep. at 201-02); Ex. A (Cosgrove Aff. ¶ 15, photographs 3-5).

28.     Cosgrove worked in isolation for most of the day in the warehouse.  Ex. A (Cosgrove Aff. ¶ 16); Ex. K (Cosgrove Dep. at 203); Ex. J (Brennan Dep. at 216).

29.     In contrast, at least 10-12 people worked in the Country Club offices, and customers came into the facility on most days.  Ex. J (Brennan Dep. at 202-03).

30.     In the position of Administrative Assistant in the Catering Sales Department, Cosgrove would have been around other employees all day, communicating with her co-workers, supervisors, and clients.  Ex. A (Cosgrove Aff. ¶ 17); Ex. K (Cosgrove Dep. at 217).

31.     Cosgrove was to be supervised by Jennifer Perry in the position of Administrative Assistant in the Catering Sales Department, with whom she would have worked closely.  When she returned, she was told to report to General Manager Stephen Brennan, but she received no direct supervision from him.  Ex. A (Cosgrove Aff. ¶ 18); Ex. K (Cosgrove Dep. at 130, 203).

32.    There was only one bathroom in the warehouse, which was dingy and dirty and which Cosgrove was required to share with her male co-workers who also worked in the warehouse.  Ex. A (Cosgrove Aff. ¶ 19, photograph 6); Ex. K (Cosgrove Dep. at 202); Ex. J (Brennan Dep. at 215).

33.    There was no private place at the warehouse where Cosgrove could pump her breastmilk, so she was required to drive to the Country Club one or twice per day to pump breastmilk in a co-worker's office.  Ex. K (Cosgrove Dep. at 27); Ex. J (Brennan Dep. at 207-08).

34.    For the first one to two weeks that she was working at the warehouse, there was no refrigerator at the warehouse in which Cosgrove could store her breastmilk.  There was a refrigerator at the Country Club in which Cosgrove could have stored her breastmilk if she had been working in the position of Administrative Assistant for the Catering Sales Department.  Ex. A (Cosgrove Aff. ¶ 20); Ex. K (Cosgrove Dep. at 205).

35.    For approximately the first week that Cosgrove was working at the warehouse, the heat in the warehouse was not working properly.  Ex. K (Cosgrove Dep. at 227); Ex. J (Brennan Dep. at 206).

36.    Cosgrove's rate of pay while working in the warehouse was $12 per hour.  Ex. A (Cosgrove Aff. ¶ 21).

37.    In September and again in October 2003, Cosgrove's attorney sent correspondence to Stephen Brennan, stating that New Seabury's actions against Cosgrove constituted sex and pregnancy discrimination and informing him that Cosgrove intended to file a complaint with the Massachusetts Commission

Against Discrimination.  Letters from Carlin to Brennan, dated Sept. 30, 2003,

and Oct. 8, 2003, Exhibit M to Schwab Aff.

     38.     Cosgrove's employment at New Seabury was terminated on

approximately October 31, 2003.  Ex. A (Cosgrove Aff. ¶ 22).


               Respectfully submitted,

               PATRICIA COSGROVE,
               By her attorneys,


               __s/Shannon Liss-Riordan_____
               Shannon Liss-Riordan, BBO #640716
               Hillary Schwab, admitted *pro hac vice*
               PYLE, ROME, LICHTEN, EHRENBERG
                  & LISS-RIORDAN, P.C.
               18 Tremont Street, 5th Floor
               Boston, MA 02108
Dated:  June 9, 2006       (617) 367-7200


## CERTIFICATE OF SERVICE

     I hereby certify that on June 9, 2006, I caused a copy of this document to be served by electronic filing on Howard I. Wilgoren, 6 Beacon Street, Suite 700, Boston, MA 02108, counsel for the defendant.


               __s/Hillary Schwab_____
               Hillary Schwab, Esq.