**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

* * * * * * * * * * * * * * * * * * * * * * ******
**PATRICIA COSGROVE**                        *
                                             *
                    **Plaintiff**            *
                                             *
**v.**                                       *    **CIVIL ACTION NO. 05-10791- GAO**
                                             *
**NEW SEABURY RESOURCES**                    *
**MANAGEMENT, INC.,**                        *
                                             *
                    **Defendant**            *
                                             *
* * * * * * * * * * * * * * * * * * * * * * ******

**MEMORANDUM OF DEFENDANT NEW SEABURY RESOURCES
MANAGEMENT, INC.S IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Defendant New Seabury Resources Management, Inc., ("NSRM") submits this memorandum in support of its motion for summary judgment on all counts of the Complaint and Demand for Jury Trial ("Complaint") filed by the plaintiff in this matter, Patricia Cosgrove. ("Plaintiff or "Cosgrove").  In her complaint, Cosgrove alleges that NSRM engaged in unlawful pregnancy discrimination and retaliation and violated the Family and Medical Leave Act by demoting her shortly after she announced that she was pregnant and retaliated against her by terminating her almost immediately after she returned from her maternity leave (Complaint, at Paragraph entitled "Introduction").  Specifically, Cosgrove asserts the following causes of action against NSRM: (1) Sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e *et seq.*,

and Mass Gen. L. c. 151B §4(1); (2) Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e *et seq.*, and Mass Gen. L. c. 151B §4(4); and, (3) violation of the Family and Medical Leave Act ("FMLA").

As grounds for  this motion, and as set forth more fully herein, NSRM asserts that judgment should enter for NSRM as a matter of law because the undisputed facts reveal that Cosgrove can not establish a *prima facia* case of pregnancy discrimination in that after her position of Conference Sales Manager was eliminated she was not replaced. Moreover even assuming *arguendo* that Cosgrove can establish a *prima facia* claim of discrimination, the undisputed facts establish beyond peradventure that her position was eliminated for legitimate and substantial business reasons.

With regard to Cosgrove's claim of retaliation the undisputed facts mandate entry of judgment in favor of NSRM. Specifically, Cosgrove can not establish a *prima facia* case.  First, there is no evidence that Cosgrove engaged in protected conduct. Second, there is no evidence that Cosgrove suffered an adverse employment action. Third, there is no evidence on the record that there was a causal connection between any protected activity and any adverse action. Even if there is sufficient evidence to establish a prima facia claim of retaliation, NSRM placed Cosgrove in the Administrative Assistant position for a legitimate non – retaliatory reason.

NSRM is also entitled to summary judgment on Cosgrove's FMLA claim as well.  As a matter of law the undisputed facts clearly establish that after NSRM provided Cosgrove with a 21 week leave of absence she was restored to the

same or substantially similar job without loss of pay, benefits and other terms and conditions of employment. Nor did NSRM retaliate against Cosgrove when it laid her off and many other employees off concurrently because the undisputed materials facts establish that such action was taken for legitimate and substantial business reasons.[1]

## II.  FACTS

NSRM hereby incorporates and makes reference to Defendant's Concise Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, Pursuant to Local Rule 56.1 ("SUMF"), filed herewith.

## III.  ARGUMENT

### A.  STANDARD OF REVIEW

Summary judgment is appropriate "when the evidence taken in the light most favorable to the non - moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Senior v. NSTAR Elec. & Gas Corp., 372 F. Supp. 159, 161 (D.Mass. 2005). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A 'genuine issue' is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the

---

[1]  It is unclear from the Complaint whether Cosgrove challenges these actions as part of Count I and Count II.  To the extent that she does NSRM is entitled to entry of summary judgment.  As noted above the undisputed facts establish that these actions were taken for legitimate and substantial business reasons.

case  Calero-Cerezo v. U. S. Dept. of Justice, 355 F. 3d 6,19 (1ˢᵗ Cir. 2004) "Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trialworthy issue." Id.

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment.  Only a genuine issue of material fact is effective in this regard. See: Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48 (1986).

To defeat summary judgment Cosgrove must present specific, competent evidence of her claims. Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Evidence that is merely colorable or is not significantly probative cannot deter summary judgment." Carroll v. Xerox Corp., 294 F. 3d 231, 236 – 237 (1ˢᵗ Cir. 2002).   "[S}ummary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Ingram.v. Brink's, Inc., 414 F. 3d 222, 228 – 229 (1ˢᵗ Cir. 2005).

"Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non – moving party rests merely on conclusory allegations, improbable inferences, and unsupported speculation." Benoit v. Technical Mfg. Corp., 331 F. 3d. 166 (1ˢᵗ Cir. 2003) (internal quotations omitted).

**B.    ELIMINATION OF COSGROVE'S POSITION WAS NOT MOTIVATED BY SEX OR PREGNANCY DISCRIMINATION**

1.   Cosgrove Cannot Establish A *Prima Facia* Case of Gender and/or Pregnancy Discrimination

In her Complaint Cosgrove alleges that the elimination of her job was motivated by impermissible considerations of her gender and by the fact that she was pregnant.  Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e *et seq.*, and Mass Gen. L. c. 151B §4(1) , both prohibit discrimination by an employer against an employee on the basis of gender and/or pregnancy.

There is no direct evidence that NSRM engaged in gender and/or pregnancy discrimination when it decided to eliminate Cosgrove's Conference Sales Manager position.  Accordingly analysis of Cosgrove's claim must be undertaken according to the burden shifting paradigm first enunciated in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 – 805 (1973), and Abramian v. President & Fellows of Harvard College, 731 N.E. 2d 1075, 1084 – 86 (Mass. 2000).  At all times the plaintiff bears the ultimate burden of proving that the conduct complained of was motivated by impermissible considerations of her protected class.  Mesnick v. General Electric Co., 950 F 2d 816, 823 (1st Cir. 1991).

In order to establish a prima  *facia case*  Cosgrove must adduce evidence that, (1) she is  a member of a protected class by virtue of her gender and/or pregnancy, (2) she met the employer's  legitimate performance expectations, (3) experienced adverse employment action, and (4) was replaced by an individual not a member of her protected class based on gender and/or pregnancy.  In a job

5

elimination situation such as at issue here, the plaintiff may show that "the employer did not treat her protected class neutrally or that a person not a member of her protected class was retained. Herbert v. Mohawk Rubber Co., 872 F.2d 1104, 1111 (1st Cir. 1989).

Cosgrove cannot establish the fourth element of the *prima facia* case. The undisputed evidence is that NSRM eliminated her position and she was not replaced at all. In fact Cosgrove admitted that her job was eliminated and she was not replaced. (SUMF ¶ 48) Nor is there a scintilla of evidence that her status as a pregnant woman was ever considered in making the decision to eliminate her position. Rather, Cosgrove takes issue with the business decision made by NSRM. In her view rather than eliminate her position NSRM should have found another way to cut costs. She suggests that someone with less tenure should have been selected or NSRM should have reduced the salaries of all employees across the board. (SUMF ¶ 49).

2.    The Decision to Eliminate the Position Held by Cosgrove Is Supported by Legitimate and Substantial Business Justification

Assuming *arguendo* that Cosgrove can establish a prima facia case with respect to elimination of her Conference Sales Manager position, NSRM is nonetheless entitled to summary judgment on this issue because the decision to do so is supported by a legitimate and substantial business justification. Stated another way the totality of the evidence is overwhelming that NSRM would have eliminated Cosgrove's position without regard to her gender or pregnancy. Smith

v. F.W. Morse & Co., Inc., 76 F.3d 413 (1st Cir. 1996),  Weston – Smith v. Cooley

Dickinson Hospital Inc., 282 F. 3d 60  (1st Cir. 2002),

     In Smith, *supra,* the Court affirmed the lower court's granting of the

defendant employer's motion for partial summary judgment that the elimination of

the plaintiff's position while she was on maternity leave was "motivated by

business judgment…and was not based on plaintiff's gender, pregnancy, or her

express desire to have more children.' Smith II 901 F. Supp. at 44, *supra*, at 422.

In so holding the Court stated,

> There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups (pregnant women included).  This is merely a reflection of the central theme that permeates the relevant jurisprudence: insofar as Title VII  is concerned, an employer can hire or fire one employee instead of another for any reason, fair or unfair, provided that the employer's choice is not driven by race, gender, pregnancy, or some other protected characteristic. The flip side of the coin, however, is that an employer who selective cleans house cannot hide behind convenient euphemisms such as "downsizing" or "streamlining." Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate the specific position must not be tainted by a discriminatory animus.

*Supra,* at 422 (internal citations omitted).  In the same vein, "If the defendant's

reasons are not discriminatory, and if plaintiff does not prove they are pretexts,

the plaintiff cannot prevail.  Matthews v. Ocean Spray Cranberries, Inc., 426

Mass. 122, 128, 686 N.E.2d 1303 (1997)

The overwhelming material evidence not in dispute clearly establishes that Cosgrove's position was eliminated for legitimate and substantial business reasons. The primary function of Cosgrove's job, which by her own admission, took up the bulk of her work day, involved around booking lodging rooms for groups coming to NSRM. (SUMF ¶ 2). Based on the substantial reduction in the availability of lodging rooms at NSRM (SUMF ¶ 8,9), and given the fact that NSRM had an entire lodging department which could handle the reduced need for booking of lodging rooms in for groups, (SUMF ¶ 38). Cosgrove's position was identified as redundant. Given this conclusion NSRM made a legitimate business decision to eliminate her position.[2]

The decision to eliminate Cosgrove's position was not done in a vacuum. In fact it occurred as part of an overall assessment of defendant's entire operation which commenced in August 2002, six months before Cosgrove announced she was pregnant (SUMF ¶ 4). At that time NSRM engaged the services of Mark O'Neil who was charged with the task of turning around an underperforming company by reducing costs, increasing revenue and enhancing productivity. From the commencement of his tenure as a consultant to NSRM O'Neil reviewed staffing levels. (SUMF ¶ 16, 17).

O'Neil conducted an Operational Audit which, *inter alia,* reviewed department staffing plans. He met with department managers to review the operation of each department. In early December he produced an Operational Audit Report. In the Operational Audit Report O'Neil identified a number of

---

[2] The substantial losses being sustained by NSRM in the area of lodging rentals also factored into its decision to reduce the number of lodging rental units making Cosgrove's position superfluous. (SUMF ¶ 10, 11).

staffing changes that needed to be made to improve efficiency, reduce costs and eliminate redundant positions. (SUMF ¶ 18 – 21, Exhibit 17).[3]

Stephen Brennan, who was ultimately hired to be General Manager/COO of NSRM In December 2002, worked with O'Neil starting in September or October 2002. He reviewed a headcount list with O'Neil to determine the functions performed by individuals in each department. (SUMF ¶ 22 - 23).

Early in the audit process O'Neil identified the Food and Beverage Department[4] as one that needed reorganization. O'Neil questioned the redundancy in positions. O'Neil questioned the need for three sales managers those being Aaron Brochu, Jane Henry and Cosgrove.[5] In particular O'Neil identified the position held by Cosgrove as being redundant because her primary function was dealing with the lodging component which he viewed as a duplication of effort with the Lodging Department. O'Neil made his judgment on the basis of the responsibilities of the position not the person holding the position. The position he identified in the audit as being redundant was the one held by Cosgrove. O'Neil first identified the position held by Cosgrove as redundant in the August – November 2002 time frame. ((SUMF ¶ 38, Exhibit 9). In this regard the Audit Report states,

> A restructuring of the sales and banquet team is recommended…. There is not a need for three (3) banquet managers.
> …

---

[3] O'Neil and Brennan also reviewed the employee headcount, Exhibit 14 in November and December 2002. Both questioned the continuing need for Cosgrove's position. (SUMF ¶ 38, 39, 43).
[4] O'Neil considered the Food and Beverage and Catering Sales Departments to be interchangeable (O'Neil Dep. 81).
[5] While Brochu and Henry regularly worked 60 - 70 hours per week during the high season, Cosgrove would work only 40 hours per week. (Cosgrove Dep. 114 – 115).

> Golf Outing Sales should be handled by the
> Corporate Sales Manager with the Director of Golf,
> The Food and Beverage Director and the Lodging
> Manager coordinating their respective departments in
> a supporting role.

O'Neil and Brennan commenced preparation of the 2003 NSRM budget in December 2003.  O'Neil prepared documents that discussed the reorganization of the Food and Beverage Department. The reorganization of the department contemplated transitioning Henry to a non sales position, lowering the base salaries and increasing incentive pay for Perry, Chase, and Brochu, The reorganization model set forth in  Exhibit 13 attached to SUMF, contained no salary for Cosgrove because O'Neil had targeted her position for elimination because of the redundancy of the sales team.  This redundancy was first identified by O'Neil when he conducted the audit in the August 2002 to December 2002 time frame and was identified by him "early on." In the budget review process commencing in December 2002 O'Neil identified Cosgrove's position for elimination. At that time he had no knowledge that Cosgrove was pregnant. (SUMF ¶ 39-42).

In November 2002 while reviewing a headcount list of NSRM employees Brennan identified Cosgrove's position as Conference Sales Manager and questioned the need for this position given the cross over between catering, catering sales and lodging. Brennan determined that Cosgrove's job function was duplicating the function of the Lodging Department. (SUMF ¶ 43).

During the budget process commencing in December 2002 Brennan and O'Neil continued to question the need for Cosgrove's position especially

considering the duplication between her duties and those performed by the Lodging Department.. Brennan discussed eliminating her position with Perry who concurred that her job could be eliminated without impacting operations and her functions could be assumed by the Lodging Department. (SUMF ¶ 44).

During the same time frame a number of other positions were being eliminated or the incumbents were demoted to lower paying jobs: The chief financial officer position was eliminated and the male incumbent was terminated. (SUMF ¶ 32).    The male Bar Manager had his job eliminated. The position of Director of Golf Operations was eliminated and the male incumbent demoted to Superintendent with a $9,000.00 reduction in pay. The male Golf Course Superintendent was demoted to Assistant Superintendent with a reduction in pay of $13,000.00 annually. The male Head Golf Professional was demoted to Instructor of Golf with a. reduction in pay of almost $900.00 on a bi – weekly basis. A number of other employees in the kitchen and Food and Beverage employees  were reclassified from full time to seasonal and were laid off for periods ranging from one to three months. The Assistant Bar Manager and an Outside Golf position were reclassified from year round to seasonal positions. (SUMF  ¶ 28 -36).

It is submitted that NSRM had a legitimate and substantial business justification for eliminating the Sales Manager position held by Cosgrove. Given the focus of the position was predominantly on the lodging aspect of group sales the marked reduction in lodging units together with the existence of a lodging department which performed the same functions, made this position entirely

redundant. Given the expressed need to cut costs and streamline jobs as set forth above elimination of Cosgrove's position is entirely justified on a business level.

"An employer may discharge an employee while she is pregnant if it does so for legitimate reasons unrelated to her pregnancy." It is axiomatic that "Title VII mandates that an employer must put an employee's pregnancy (including departure on maternity leave) to one side in making its employment decisions— but the statute does not command that an employer bury its head in the sand and struthiously refrain from implementing business judgments simply because they affect a parturient employee" Smith, *supra,* at 424.

Indeed in the instant case the redundancy in the Sales Manager position was identified many months before NSRM was aware of Cosgrove's pregnancy. Because NSRM's decision to eliminate the Sales Manager position held by Cosgrove was undertaken for substantial and legitimate business reasons summary judgment should enter on this aspect of the case.[6]

### B. OFFERING COSGROVE A JOB WAS NOT DISCRIMINATORY OR RETALIATORY

After the job held by Cosgrove was eliminated NSRM offered her a job as an Administrative Assistant position in the Catering Sales Department. Although there was no job description Brennan described the duties as doing anything necessary for the operation. (SUMF ¶ 50 - 52). It is undisputed that Cosgrove accepted the Administrative Assistant position. (SUMF ¶ 60).

---

[6] An analysis of the employee complement at NSRM show a drastic reduction in both the full time as well as the seasonal work force. (SUMF ¶ 12 - 14).

Although Cosgrove attempts to classify this action as a demotion, it was an offer of an entirely new job to which Cosgrove was not entitled. Once her job as Conference Sales Manager was eliminated, as an employee at will (SUMF ¶ 3) NSRM would have been within its rights to terminate her employment. As noted above a number of employees, not in Cosgrove's protected classes had their employment terminated when their jobs were eliminated.

Accordingly, Cosgrove cannot establish a *prima facia* case of discrimination based on pregnancy and/or gender. Cosgrove did not suffer from any adverse employment action. Once her job was lawfully eliminated she was not entitled to another job.

Moreover, Cosgrove cannot establish that the offer of the Administrative Assistant position  was in any way retaliatory for engaging in protected activity. As of April 28, 2003 when the Administrative Assistant job was offered Cosgrove had not engaged in any activity for which protection against retaliation is afforded under either Title VII or state law.

In order to establish a claim of unlawful retaliation under state or federal law Cosgrove must establish that she engaged in protected conduct, that she suffered an adverse employment action and that a causal connection exists between the protected conduct and the adverse action. Fennell v. First Step Designs, Ltd., 83 F. 3d 526, 535 (1st Cir. 1996)

Even assuming *arguendo*  that a prima facia case of retaliation is established, the offer of the Administrative Assistant position was done for

13

legitimate non – retaliatory reasons. This is established by the undisputed evidence on the record. (SUMF ¶ 50 -53).

To the extent that Cosgrove challenges the manner in which she was restored to work after her leave of absence or her subsequent layoff as being discriminatory or retaliatory, as explicated below, each of these actions were undertaken by NSRM for legitimate and substantial business reasons and therefore to the extent they are being challenged on these grounds by Cosgrove, summary judgment should enter in favor of NSRM.

### C.    COSGROVE WAS REINSTATED TO A SUBSTANTIALLY SIMILAR POSITION WHEN SHE RETURNED FROM MATERNITY LEAVE IN ACCORD WITH THE REQUIREMENTS OF THE FMLA

FMLA requires that after a leave of absence an employee "be restored by the employer to the position of employment held by the employee when the leave commenced" or "be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1).  "The statute expresses no preference for restoration to the original position; all that an employee need do is provide an equivalent position." 29 C.F.R. 825.214(a); Green v. New Balance Athletic Shoe, Inc., 182 F. Supp. 2d 128, 136 (D. ME. 2002).

In examining Cosgrove's reinstatement from leave, and below, her subsequent layoff, it is important to keep in mind that she is entitled to "no greater right to reinstatement or to other terms and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  29 C.F.R. 825.216(a).  If an employee who is employed for a specific

term the employer has no obligation to restore the employee to work 29 C.F.R. 825.216(2)(b).

NSRM offered and Cosgrove accepted the Administrative Assistant position in the Catering Sales Department. Her former job as Sales Manager had been eliminated and Cosgrove was scheduled to assume her new job on May 11, 2003. However, unexpectedly a few days before assuming this position Cosgrove commenced her leave of absence. (SUMF ¶ 52, 60, 63)[7]

The Administrative Assistant position in the Catering Sales Department has always been a seasonal position Brennan made this clear to Cosgrove when he offered her the job. (SUMF ¶ 52 - 53).

Cosgrove was well aware at all times that the Administrative Assistant position in the Catering Sales Department was always classified as a seasonal position. Taddeo did work for Cosgrove who observed when she was there and when she was laid off. (SUMF ¶ 53, 55).

Lauralee Taddeo had held the Administrative Assistant position in the Catering Sales Department for a number of years prior to 2003. The position was a 40 hour per week job which lasted from may to October each year. (SUMF ¶ 53, 55 Exhibit 17).

Cosgrove returned from her leave of absence on October 7, 2003. Taddeo, who had filled the Administrative Assistant position in the Catering Sales Department in Cosgrove's absence, was laid off three days later when it was no longer necessary to staff the position (SUMF ¶ 71, 74, 76).

---

[7] NSRM gave Cosgrove a twenty one week leave of absence and was paid disability pay based on the wage rate of the job being eliminated. (SUMF ¶ 62, 64). This conduct negates any inference that NSRM was engaging in discriminatory or retaliatory conduct..

Perhaps NSRM should have restored Cosgrove to the Administrative Assistant position in the Catering Sales Department on October 7, 2003. As a seasonal employee NSRM would have been well within its rights to lay her off three days later pursuant to 29 C.F.R. 825.216(2)(b). This would have provided her with a form or restoration that would be fully in accord with the requirements of the FMLA.

However,  as is its right under the FMLA, NSRM in consideration of the fact that the incumbent in the Administrative Assistant position in the Catering Sales Department  was about to be laid off, restored Cosgrove to "an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment." '. 29  U.S.C. § 26149a)(1)(A)-(B)

It is undisputed that Cosgrove received the same pay and benefits of the Administrative Assistant position in the Catering Sales Department.  And, as set forth above as the job she was offered and accepted was seasonal, Cosgrove's subsequent lay off was appropriate.

Cosgrove claims that she was not provided with "other terms and conditions of employment that came with the Administrative Assistant position in the Catering Sales Department. In particular she objects to the location of the position she was assigned to, the bathroom facilities, lack of heat and having to go to the Administrative Offices to pump her breast milk. She also complains about the reduced complexity of her job assignment. It is submitted that  none of these complaints rise to the level of  "other terms and conditions of employment that came with the Administrative Assistant position in the Catering Sales

Department.    These are intangible complaints are not sufficient to defeat NSRM's efforts to place Cosgrove in a substantially equivalent position. As the regulations provide,  equivalent terms and conditions of employment, however do not require equivalence with respect to "the de minimis or intangible, unmeasurable aspects of the job." 29 C.F.R. 825.215(f).

NSRM took pains to accommodate Cosgrove's needs. She was assigned an Administrative Assistant position doing scanning in the same manner as a previous employee classified as an Administrative  Assistant had done. (SUMF ¶ 77 -79)[8]

Cosgrove was assigned to work in an enclosed office in the warehouse. She did not have to go to the warehouse for any business reason. The work was being done in this office because the boxes containing the records to be scanned were located there[9]. She was given a key to access her office directly without even going into the warehouse. Cosgrove was authorized to go to the Administration building to pump her breast milk whenever necessary and was paid to do so. The same for use of the rest room. She could go to the Administration Building or the Country Club whenever she needed to and was paid to do so. When she complained about lack of heat she was provided with a space heater. NSRM also provided her with her own refrigerator to store her breast milk. Both the Director of Information Technology and Jeff Fullerton, the

---

[8]  Cosgrove concedes this point. (SUMF ¶ 79).
[9]  There were several hundred boxes located in the warehouse. (SUMF ¶ 81).

17

Facilities Manager had there offices in the same area as the office assigned to Cosgrove.  (SUMF ¶ 80 - 87).[10]

Cosgrove's complaints focus on the de minimis, intangible and unmeasurable aspects of the job that the regulations specifically exclude. Here, as in Montgomery v. The State of Maryland, 266 F.3d 334 (4th Cir. 2001, *vacated and remanded on other grounds,* Montgomery v. The State of Maryland, 535 U.S. 1075 (2002), *appeal after remand.* 2003  U.S. App. LEXIS  15068 (2003) the plaintiffs both complain that the work was less complex than their former job. In Montgomery, *supra,*  the Court concluded that the change in job duties to mundane ones and the change in location where she performed her job were de minimis. A similar conclusion was reached by the Court in McKearney v. Answer Think Consulting Group, Inc., 13 Mass. L. Rptr. 57, 2001 WL 417179 (Mass. Super. Ct. 2001) where it concluded that the change in location where an employee returning from maternity leave was not discriminatory where the employer articulated a legitimate non discriminatory reason for the change. Similarly, here Cosgrove was assigned the work location based on its proximity to the boxes of records she was scanning.

Accordingly, summary judgment should enter in favor of NSRM on this claim.

### D.    COSGROVE'S LAYOFF WAS SUPPORTED BY LEGITIMATE AND SUBSTANTIAL BUSINESS REASONS.

Cosgrove was laid off on October 31, 2003. At the time of the lay off there were no other administrative assistant positions available. Between September 1,

---

[10] In a typical eight hour day Cosgrove worked approximate four hours (SUMF ¶ 88).

and December 16, 2003 seventy – eight employees were laid off by NSRM. Thirty four employees were laid off between October 27 and October 31, 2006. Administrative Assistant Lauralee Taddeo was laid off on October 10, 2003, Administrative Assistant Joan Johnson was laid off on November 7, 2003, (SUMF ¶ 91).

It is submitted that Cosgrove's lay off is supported by legitimate, substantial and non – discriminatory business justification for purposes of defeating a claim of gender or pregnancy discrimination, retaliation pursuant to Title VII, state law or FMLA. Green, *supra*; Abramain, *supra*; Hodgens v. General Dynamics Corp., 144 F. 3d 151 (1st Cir. 1998), LeBlanc v. Great American Insurance Company 6 F 3d 836 (1st Cir. 1993), Yashenko v. Harrah's NC Casino Company, 2006 U.S. App. Lexis 10469 (4th Cir. 2006).

As noted above it is undisputed that NSRM's layoff of Cosgrove was undertaken for legitimate business reasons of reducing its seasonal employee complement to essential personnel. (SUMF ¶ 26). The position she was offered and accepted was always considered a seasonal position. In this regard NSRM like, the employer in General Dynamics, *supra,* followed its well established pattern of laying off employees. There is simply no evidence that NSRM gave any consideration of Cosgrove's status when it laid her off.

## CONCLUSION

For all of the  foregoing reasons it is respectfully submitted that NSRM be granted summary judgment  on each count of the Complaint filed by Patricia Cosgrove.

Respectfully submitted,

NEW SEABURY RESOURCES
MANAGEMENT, INC.,

By its attorney,

s/ Howard I. Wilgoren_____
Howard I. Wilgoren(BBO No.527840
6  Beacon Street, Suite 700
Boston, MA 02108
(617) 523 – 5233

Dated:  June 12, 2006

## CERTIFICATE OF SERVICE

I, Howard I. Wilgoren, hereby certify that the foregoing document was filed through the ECF system on June 12, 2006, and that a true paper copy of this document was sent to those indicated as non registered participants on the Notice of Electronic Filing on May 31, 2006 by first class mail. I further certify that a courtesy copy of the foregoing document was served on June 12, 2006 by first class mail upon plaintiff's counsel  Hilary Schwab, Esquire, 18 Tremont Street, Boston, MA 02108

s/ Howard I. Wilgoren_____
Howard I. Wilgoren

Dated:  June 12, 2006