### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____

PATRICIA COSGROVE,                           )
                          Plaintiff,         )
                                             )
          v.                                 )
                                             )
NEW SEABURY RESOURCES                        )          **Civil Action No.**
     MANAGEMENT, INC.,                        )          **1:05-cv-10791-GAO**
                                             )
                          Defendant.         )
_____ )

### PLAINTIFF PATRICIA COSGROVE'S OPPOSITION TO
### DEFENDANT NEW SEABURY RESOURCES MANAGEMENT, INC.'S
### MOTION FOR SUMMARY JUDGMENT

There are three employment decisions at issue in this case, and Cosgrove

contends that each decision violated the provisions of Title VII, Mass. Gen. L. c.

151B, and the Family and Medical Leave Act.  First, in May 2003, less than three

months after she had notified her employer that she was pregnant and requested

maternity leave under the FMLA, she was demoted from the position of

Conference Sales Manager to Administrative Assistant in the Catering Sales

Department.  Cosgrove alleges that this demotion constituted pregnancy

discrimination in violation of Title VII and Chapter 151B and retaliation for her

invocation of her rights under the FMLA.  Second, when Cosgrove returned from

her maternity leave in September 2003, she was not restored either to the

position of Conference Sales Manager or to the Administrative Assistant position

but was placed in a position scanning documents, working all day in isolation in a

warehouse.  It is Cosgrove's position that this job change constituted retaliation

for her assertion of pregnancy discrimination and for her exercise of her FMLA

rights and that the job change was also a violation of the FMLA's requirement that an employee be restored to her position or an equivalent position on her return from leave.[1]  Finally, Cosgrove was terminated in October 2004, once again in violation of Title VII's and Chapter 151B's prohibition on retaliation and in violation of the FMLA.

Contrary to New Seabury's assertion in its motion, it is not entitled to summary judgment on Cosgrove's claims.  At the very least, there is a dispute of fact as to whether New Seabury's actions violated Title VII, Chapter 151B, and the FMLA, and this dispute must be resolved by a jury.

## ARGUMENT

**I.    NEW SEABURY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS TO COSGROVE'S DEMOTION FROM CONFERENCE SALES MANAGER TO ADMINISTRATIVE ASSISTANT IN THE CATERING SALES DEPARTMENT.**

**A.    There is a dispute of fact as to whether Cosgrove's demotion constituted discrimination because of her gender and pregnancy.**

New Seabury has conceded that Cosgrove satisfies the first three elements of a prima facie case of pregnancy discrimination with respect to her demotion:  she was pregnant; her job performance was satisfactory; and she suffered an adverse employment action when she was demoted from Conference Sales Manager to Administrative Assistant in the Catering Sales

---

[1]    As explained in Plaintiff's Motion for Partial Summary Judgment, there is no material dispute of fact as to whether Cosgrove was restored to her position or an equivalent position after her FMLA leave, and Cosgrove is entitled to summary judgment on New Seabury's liability on this claim as a matter of law.

Department.[2]  Def.'s S.J. Mem. at 5-6.  The only dispute is whether Cosgrove can establish the fourth prong of a prima facie case, which can be met by establishing either that her job duties continued to be "performed by a comparably qualified person," *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 421 (1st Cir. 1996), or that "pregnant employees are treated differently from non-pregnant employees who are otherwise similarly situated."  *Mejias Miranda v. BBII Acquisition Corp.*, 120 F. Supp. 2d 157, 165 (D.P.R. 2000).  Moreover, a plaintiff whose position was changed "in the course of a reduction in force need not demonstrate that he was *replaced*, but may show that 'the employer did not treat [pregnancy] neutrally or that [non-pregnant] persons were retained in the same position.'"  *Goldman v. First Nat. Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir. 1993) (internal citations omitted).

If Cosgrove establishes a prima facie case, the burden shifts to New Seabury to present a legitimate, nondiscriminatory reason for the demotion. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 116-17 (2000).  Here, New Seabury has asserted that Cosgrove was demoted as part of a company-wide reorganization.  Def.'s S.J. Mem. at 8.  While it is possible for an employer to downsize without violating Title VII, "an employer who selectively cleans house

---

[2]     Later in its brief, New Seabury appears to suggest that Cosgrove's demotion did not constitute adverse action.  Def.'s S.J. Mem. at 12-13.  However, the undisputed facts show that, when Brennan informed Cosgrove that her position as Conference Sales Manager was being eliminated, she was offered the position of Administrative Assistant in the Catering Sales Department at a lower salary and with less responsibility.  Pl.'s Fact Stmt. ¶¶ 2, 8, 25-26.  The law is clear that such a demotion constitutes adverse action for purpose of a Title VII claim.  *See Burns v. Potter*, 334 F. Supp. 2d 13, 19 (D. Mass. 2004) (noting that adverse action under Title VII includes "discharging or demoting [an employee], reducing her salary, or divesting her of significant responsibilities") (quoting *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996)).

cannot hide behind convenient euphemisms such as 'downsizing' or 'streamlining.'  Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate specific positions must not be tainted by a discriminatory animus."  *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 422 (1st Cir. 1996).

To survive summary judgment when an employer has presented a purported nondiscriminatory reason for the adverse action, a plaintiff must present evidence that the proffered reason is pretext for a discriminatory animus. *See Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 6 (1st Cir. 2000).  To meet this burden, all the plaintiff must do is present evidence that "enables a factfinder 'reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment decision.'" *Id.* at 6 (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999)). A plaintiff may demonstrate pretext in numerous ways.  "One method is to produce evidence that the plaintiff was treated differently than other similarly situated employees."  *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003).  Another method is to "show[] that discriminatory comments were made by those in a decision-making position."  *Flanagan-Uusitalo v. D.T. Industries, Inc.*, 190 F. Supp. 2d 105, 114 (D. Mass. 2001).  Finally, a plaintiff can demonstrate pretext by showing a pattern of discrimination against members of the protected class.  *See Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1115 (1st Cir. 1989); *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1342 (1st Cir. 1988)

("[P]retext can be established by direct evidence of discrimination, comparative evidence, statistical evidence, or a combination of the three.").

While there are technically three stages to the *McDonnell Douglas* burden-shifting analysis, "[t]he 'ultimate touchstone' of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination." *Kosereis*, 331 F.3d at 213. A plaintiff may defeat summary judgment simply by demonstrating that the employer's stated reasons for its actions are pretext. *Id.*

New Seabury has advanced several arguments in support of its claim that there was a legitimate basis for Cosgrove's demotion, as to all of which there is at least a dispute of fact. First, New Seabury claims that it identified Cosgrove's position as redundant and decided to eliminate the position on that basis and not because of her pregnancy. Def.'s S.J. Mem. at 8. However, the evidence shows only that the consultant Mark O'Neil "recommended the elimination [of] one of the three sales managers who were Cosgrove, Aaron Brochu and Jane Henry," Def.'s Fact Stmt. ¶ 37, not Cosgrove's position specifically. Moreover, New Seabury has conceded that the decision to eliminate Cosgrove's position was not made until February 2003, immediately after Cosgrove informed Stephen Brennan, the General Manager at New Seabury, of her pregnancy. Def.'s Fact Stmt. ¶ 44; Pl.'s Fact Stmt. ¶ 3. Moreover, the actual elimination of Cosgrove's position occurred in April 2003, approximately two months after Brennan learned of her pregnancy. Pl.'s Fact Stmt. ¶ 8.

New Seabury also claims that Cosgrove's position was not replaced. Def.'s S.J. Mem. at 6. However, Cosgrove has presented evidence showing that

she was replaced.  First, the evidence shows that New Seabury externally hired another salesperson before demoting Cosgrove.  Pl.'s Fact Stmt. ¶¶ 71-72. Additionally, it is undisputed that, with the exception of her attendance at trade shows, all of Cosgrove's duties were performed by members of the Catering Sales Department after her demotion.  Pl.'s Fact Stmt. ¶ 81.  Finally, though New Seabury claims that it determined that there was not a need for three sales managers, New Seabury created a third sales manager position approximately one year after Cosgrove's termination.  Pl.'s Fact Stmt. ¶ 52.  These facts create a dispute of fact as to whether Cosgrove's position was eliminated.

Finally, New Seabury argues that Cosgrove's demotion was part of a companywide restructuring, during which many other positions were being eliminated.  Def.'s S.J. Mem. at 11.  In fact, though New Seabury attempts to paint a picture of a large number of layoffs and demotions, Brennan could point to only seven full-time, year-round employees whose positions were adversely affected by New Seabury's restructure.  Pl.'s Fact Stmt. ¶¶ 55-70.  Three of the seven were pregnant when their positions were eliminated.[3]  Pl.'s Fact Stmt. ¶¶ 64-70. The fact that almost half of the changes in permanent positions affected pregnant women raises at least a dispute of fact as to whether New Seabury has "selectively clean[ed] house" and is attempting to "hide behind convenient euphemisms such as 'downsizing' or 'streamlining.'"  *Smith*, 76 F.3d at 422.

In addition to the material disputes of fact as to New Seabury's proffered reasons for demoting Cosgrove, Cosgrove has presented evidence of a

---

[3]    Of the other four, three were in the Golf Department.  Pl.'s Fact Stmt. ¶¶ 54-59. Moreover, two of those in the Golf Department requested the change in their positions.  Pl.'s Fact Stmt. ¶¶ 55, 58.

discriminatory comment made by Brennan, the manager who made the decision
to demote Cosgrove, which in itself is sufficient to establish pretext.  *See*
*Flanagan-Uusitalo*, 190 F. Supp. 2d at 114.  Specifically, when Cosgrove told
Brennan that she was pregnant and intended to return to work after her leave,
Brennan commented, "unless you are like my wife . . . and don't ever go back to
work."  Pl.'s Fact Stmt. ¶ 6.  A reasonable factfinder could construe this comment
as derogatory against pregnant women who plan to remain in the workforce and
indicative of Brennan's discriminatory animus against pregnant women.

There can be no question that Cosgrove has presented sufficient evidence
to survive summary judgment on her claim that her demotion was motivated by
sex and pregnancy discrimination.  She has presented a dispute of fact as to the
motivation behind the decision to "eliminate" her position instead of the positions
of the other non-pregnant sales manager and as to whether her position was
replaced.  Moreover, in demonstrating that three of the seven permanent
employees whose jobs were affected by the restructure were pregnant women,
she has shown a pattern of discriminatory behavior.  Finally, she has presented
evidence of a discriminatory comment by the decisionmaker on her demotion.
Viewing this evidence in the light most favorable to Cosgrove, there can be no
question that a reasonable factfinder could determine that Cosgrove has
established a prima facie case of pregnancy discrimination with respect to her
demotion and that New Seabury's purported reason for demoting Cosgrove—a
restructure of the company—was pretext for pregnancy discrimination.

**B.    There is a dispute of fact as to whether Cosgrove's demotion constituted retaliation for her exercise of her FMLA rights.**

New Seabury does not appear to move for summary judgment on Cosgrove's claim that her demotion violates her rights under the FMLA. However, to the extent that its motion can be construed as encompassing such an argument, it is clear that Cosgrove has presented at least a dispute of fact on that issue.

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under this subchapter," nor may an employer "discharge or in any other manner discriminate against an individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a).  The First Circuit applies the *McDonnell Douglas* burden-shifting framework to a claim of FMLA retaliation.  *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998).  Under that framework, a plaintiff must first establish a prima facie case by showing:  "that he engaged in protected action . . . ; (2) that he suffered an adverse employment action . . . ; and (3) that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, in that the two were not wholly unrelated."  *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 336 (1st Cir. 2005).  Requesting leave under the FMLA constitutes "protected action."  *Id.*

A causal connection between the protected conduct and the adverse employment action may be inferred from close temporal proximity between the protected conduct and the adverse act.  *Hodgens v. General Dynamics Corp.*,

144 F.3d 151, 168 (1st Cir. 1998); *see also Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988). A showing of temporal proximity is sufficient to defeat summary judgment. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (listing "temporal proximity of an employee's protected activity to an employer's adverse action" as one "source[] of circumstantial evidence that . . . can demonstrate retaliation in a way sufficient to leap the summary judgment . . . hurdle[]"); *see also Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1046 (D. Mass. 1995). Other circumstantial evidence that may be "sufficient to leap the summary judgment . . . hurdle[]" include "evidence of differential treatment in the workplace, statistical evidence showing disparate treatment, . . . , and comments by the employer which intimate a retaliatory mindset." *Mesnick*, 950 F.2d at 828 (internal citations omitted).

There can be no dispute that Cosgrove satisfies the first two prongs of a prima facie case of FMLA retaliation. First, she engaged in protected activity under the FMLA by requesting maternity leave in her February 3 memorandum to Brennan. Pl.'s Fact Stmt. ¶¶ 3-5; *Colburn*, 429 F.3d at 336. Second, it is clear that her demotion from Conference Sales Manager to Administrative Assistant in the Catering Sales Department constituted adverse action. *See* note 2, *supra*.

Cosgrove has also established a dispute of fact as to the third prong of a prima facie case—whether her demotion was in retaliation for her protected activity under the FMLA. First, she has presented evidence of the temporal proximity between her protected activity and the adverse action. Cosgrove requested leave in early February, and she was demoted less than three months

later, in April.  Pl.'s Fact Stmt. ¶¶ 3, 8.  Moreover, New Seabury concedes that

the actual decision to terminate Cosgrove was made in February 2003, the same

month in which she requested FMLA leave.  Def.'s Fact Stmt., ¶ 44.

As discussed above, Cosgrove has also presented circumstantial

evidence from which a reasonable factfinder could infer retaliation.  First,

Brennan's comment to Cosgrove questioning whether she actually intended to

return to work after her leave constitutes a comment "intimat[ing] a retaliatory

mindset."  Pl.'s Fact Stmt., ¶ 6;  *Mesnick*, 950 F.2d at 828.  Moreover, as

discussed above, Cosgrove is one of three pregnant women who suffered

adverse employment action after notifying New Seabury of their intention to take

maternity leave in early 2003.  Rhonda Rodgers requested maternity leave in

January 2003 and was terminated in May 2003.  Pl.'s Fact Stmt. ¶¶ 64-66.

Michele O'Brien requested maternity leave in February 2003 and was terminated

in March 2003.  Pl.'s Fact Stmt. ¶¶ 67-69.  Cosgrove requested maternity leave

on February 3, 2003, and was demoted in April 2003.  Pl.'s Fact Stmt. ¶¶ 3, 70.

The temporal proximity of Cosgrove's request for FMLA leave to the

decision to demote her, coupled with Brennan's comment and the evidence of

the two other pregnant women who were terminated after requesting FMLA

leave, constitutes sufficient evidence to defeat summary judgment on this claim.

## II.     NEW SEABURY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS TO COSGROVE'S PLACEMENT IN THE WAREHOUSE SCANNING DOCUMENTS AFTER HER RETURN FROM FMLA LEAVE.

Cosgrove asserts that New Seabury's failure to return her either to her

position as Conference Sales Manager or to the position of Administrative

Assistant in the Catering Sales Department when she returned from her maternity leave violates the law in at least three ways: (1) it constitutes retaliation for her exercise of her rights under Title VII;[4] (2) it constitutes retaliation for her request for and use of FMLA leave; and (3) it violates the FMLA's requirement that employees returning from leave be restored to the same or an equivalent position. Though it does not appear that New Seabury has moved for summary judgment on Cosgrove's claims of Title VII and FMLA retaliation, the facts and law supporting those claims are set forth below.

### A.    There is a dispute of fact as to whether Cosgrove's demotion constituted retaliation under Title VII.

Title VII forbids an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To prove a claim of Title VII retaliation, "a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004).

A plaintiff may satisfy the first prong by complaining to her employer about a violation of Title VII. *See Allder v. Daniel O'Connell's Sons*, 20 F. Supp. 2d 210, 219 (D. Mass. 1998); *see also White v. N.H. Dept. of Corr.*, 221 F.3d 254, 262 (1st Cir. 2000) ("The plaintiff engaged in protected activity by filing her

---

[4]    Cosgrove also asserts that this change in her employment constitutes sex and pregnancy discrimination. The evidence of discriminatory animus has been set forth in Section I.A, *supra*, in connection with Cosgrove's claim that her original demotion was motivated by sex and pregnancy discrimination.

internal and EEOC complaints."); *Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1044 (D. Mass. 1995).

What constitutes an adverse employment action under the second prong is broadly defined to include any action that might have deterred a reasonable employee from exercising her rights under Title VII. Significantly, just last month, the United States Supreme Court clarified the standard to be applied to determine whether an employer's actions constitute retaliation under Title VII. *Burlington Northern and Santa Fe Ry. Co. v. White*, __ S.Ct. __, 2006 WL 1698953 (June 22, 2006). The Court interpreted Title VII's anti-retaliation provision "to provide broad protection from retaliation," explaining that such an interpretation "helps assure the cooperation upon which accomplishment of the Act's primary objective depends." 2006 WL 1698953, at *9. The Court held that, to establish retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 2006 WL 1698953, at *10 (internal citations and quotation marks omitted). The Court explicitly rejected the employer's argument that "a reassignment of duties cannot constitute retaliatory discrimination where, as here, both the former and the present duties fall within the same job description." 2006 WL 1698953, at *12. The Court explained:

> Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee such as White from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable.

*Id.* Because the position into which the plaintiff in *Burlington Northern* was placed was "by all accounts more arduous and dirtier," her original position "required more qualifications, which is an indication of prestige," and the original position "was objectively considered a better job," the Court held that "a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." *Id.*

Finally, as discussed above, a causal connection between the protected conduct and the adverse employment action may be inferred from close temporal proximity between the protected conduct and the adverse act. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) ("protected conduct closely followed by adverse action may justify an inference of retaliatory motive."). A showing of temporal proximity is sufficient to defeat summary judgment. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (listing "temporal proximity of an employee's protected activity to an employer's adverse action" as one "source[] of circumstantial evidence that . . . can demonstrate retaliation in a way sufficient to leap the summary judgment . . . hurdle[]"); *see also Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1046 (D. Mass. 1995). Other circumstantial evidence that may be "sufficient to leap the summary judgment . . . hurdle[]" include "evidence of differential treatment in the workplace, statistical evidence showing disparate treatment, . . . , and comments by the employer which intimate a retaliatory mindset." *Mesnick*, 950 F.2d at 828 (internal citations omitted).

Cosgrove has presented evidence sufficient to establish all three prongs of a claim for retaliation under Title VII. First, Cosgrove engaged in at least two protected activities. In a letter to Stephen Brennan dated May 2, 2003, she stated that she believed that her demotion from the Conference Sales Manager position constituted pregnancy discrimination and that she intended to file a complaint with the Massachusetts Commission Against Discrimination. Pl.'s Fact Stmt. ¶¶ 12-15. Additionally, Cosgrove's attorney sent a letter to Brennan dated September 30, 2003, informing him that Cosgrove intended to return to work the following week and that her demotion constituted pregnancy discrimination and a violation of statutes governing maternity leave and attaching a draft of a Charge of Discrimination to be filed against New Seabury with the Massachusetts Commission Against Discrimination. Pl.'s Fact Stmt. ¶¶ 33-35. These letters constitute protected activity under Title VII.

Second, as a matter of law, Cosgrove's placement in the warehouse scanning documents constitutes an adverse employment action. The position that Cosgrove had accepted was that of Administrative Assistant in the Catering Sales Department, a position in which she would have had varied responsibilities, including contact with co-workers and clients, and would have utilized the skills that she had developed in her previous position. Pl.'s Fact Stmt. ¶¶ 25-26. Cosgrove would also have had the opportunity to advance in that position, as evidenced by the fact that New Seabury has subsequently placed an individual in the position of Assistant Catering Sales Manager, a position that incorporates administrative responsibilities for the department. Pl.'s

14

Fact Stmt. ¶ 51.  In sharp contrast, the position into which Cosgrove was placed was located in a warehouse, involved monotonous, tedious work that required no skills, and she spent most of the day in isolation.  Pl.'s Fact Stmt. ¶ 42.[5]

Contrary to New Seabury's argument, the differences between the two positions are not "intangible" and are precisely the differences that the Supreme Court recently held to be "materially adverse" in *Burlington Northern*.  As in that case, the warehouse position was "more arduous and dirtier" than Cosgrove's former position[6] and her former position "required more qualifications."  2006 WL 1698953, at *12.  Based on the undisputed facts in the record, the placement of Cosgrove in the warehouse position constituted adverse action under Title VII.  At the very least, there is sufficient evidence from which a jury could conclude that the placement of Cosgrove in the warehouse position was adverse action.[7]

Moreover, though New Seabury claims that the position offered to Cosgrove in April 2003 was a seasonal position, Def.'s S.J. Mem. at 15, there is at the very least a dispute of fact as to that.  Brennan did not tell Cosgrove that it was a seasonal position, the documentation of the change of her position

---

[5]    The stark difference between the position of Administrative Assistant in the Catering Sales Department and the warehouse position is set forth in detail in Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support Thereof and Plaintiff's Statement of Material Facts as to Which There is No Issue to Be Tried in Support of Motion for Partial Summary Judgment.

[6]    New Seabury asserts that Cosgrove never had to enter the warehouse for any reason and that she was given a key directly to her office.  However, that is simply not true.  Cosgrove did have to go into the warehouse to access her office, to use the bathroom, to receive deliveries, and to use the copy machine, and she was not given a key to the warehouse.  Pl.'s Opp. to Def.'s Fact Stmt. ¶ 85.

[7]    Significantly, in *Burlington Northern*, the Court explicitly rejected the argument advanced by New Seabury here, Def.'s S.J. Mem. at 16, that "a reassignment of duties cannot constitute retaliatory discrimination where, as here, both the former and the present duties fall within the same job description."  2006 WL 1698953, at *12.  Contrary to New Seabury's argument, therefore, the fact that the warehouse job and Cosgrove's former position may fall into the same job category is insufficient to establish lack of adverse action as a matter of law.

described it as a full-time, year-round position, and Brennan knew Cosgrove intended to take a leave that would end at around the same time as the high season. Pl.'s Fact Stmt. ¶¶ 9-11. Moreover, Cosgrove's replacement in the position was scheduled to leave in October 2003 because that was when Cosgrove was expected to return to the position, not because the position was seasonal. Pl.'s Fact Stmt. ¶¶ 27-28. Finally, approximately one year later, another person was placed in a comparable position. Pl.'s Fact Stmt. ¶ 52. A reasonable jury could infer that the position was year-round and that just placing Cosgrove in a seasonal position on her return from leave, without more, constituted an adverse action.

Finally, the evidence is sufficient to establish a causal connection between Cosgrove's assertion of her rights under Title VII and the adverse action of placing her in the warehouse position. First, Cosgrove's attorney sent the letter to Brennan on September 30, 2003, and he placed Cosgrove in the warehouse position immediately upon Cosgrove's return to work one week later. Pl.'s Fact Stmt. ¶¶ 33-35, 40. This temporal proximity alone is sufficient to defeat summary judgment. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991). Second, Brennan's actions upon Cosgrove's return raise an inference of retaliation. Brennan acknowledged that he received a telephone message from Cosgrove that he did not return in late September 2003 and that her attorney sent him a letter informing him that Cosgrove intended to return to work, but still he claimed to believe that she "was gone" and would not be returning from leave. Pl.'s Fact Stmt. ¶¶ 30-33, 36. When she did come back, he was not prepared for

her return and sent her home for the day so he could "find something for her."

Pl.'s Fact Stmt. ¶¶ 36, 38-39.

Finally, Brennan admits to making a comment in October 2003 indicating that he was conscious of Cosgrove's intention to sue New Seabury.  Specifically, he stated that, when he learned that a co-worker was allowing Cosgrove to pump breastmilk in her office, he approached the co-worker and said, "we're walking a fine line here as a company, so watch what you say."  Pl.'s Fact Stmt. ¶ 47. Brennan conceded at his deposition that he made that comment in reference to the fact that Cosgrove had already informed New Seabury that she was looking to try to sue the company.  Pl.'s Fact Stmt. ¶ 48.  A jury could easily infer from this evidence that Brennan had a retaliatory motive in placing Cosgrove in the warehouse position.  *See Mesnick*, 950 F.2d at 828 (circumstantial evidence that may be "sufficient to leap the summary judgment . . . hurdle[]" includes "comments by the employer which intimate a retaliatory mindset").

**B.    There is a dispute of fact as to whether Cosgrove's demotion constituted retaliation under the FMLA.**

The retaliation inquiry under the FMLA is essentially the same as the inquiry under Title VII.  Cosgrove's letter in May 2003 and her attorney's letter in September 2003 invoked both antidiscrimination laws and family leave laws. Pl.'s Fact Stmt. ¶¶ 12-15, 33-35.  Accordingly, those letters constitute protected activity under the FMLA as well.  Moreover, Cosgrove also exercised her right to take leave under the FMLA, returning to work on October 7, 2003.  Pl.'s Fact Stmt. ¶ 29.  For the reasons discussed above, Brennan's placement of Cosgrove in the warehouse position constituted adverse action, and the temporal proximity

between her protected activity and the adverse action supports an inference that the decision was causally connected to her exercise of her FMLA rights.

**C.    As a matter of law, Cosgrove is entitled to summary judgment on her claim that her placement in the warehouse position violated her substantive rights under the FMLA.**

As set forth in Plaintiff's Motion for Partial Summary Judgment, Cosgrove satisfies the elements of a claim for failure to restore under the FMLA as a matter of law. Significantly, Cosgrove's summary judgment motion is further bolstered by the Supreme Court's recent decision in *Burlington Northern*. The inquiry as to whether an employee has been returned to an equivalent position under the FMLA involves the same considerations as the inquiry as to whether an employment decision constitutes adverse action. *See, e.g., Watkins v. J & S Oil Co., Inc.*, 977 F. Supp. 520, 523 (D. Me. 1997) ("Failure to offer Plaintiff an equivalent position at the end of his leave may . . . constitute an adverse employment decision."). For the reasons set forth in Section II.A, *supra*, the placement of Cosgrove in the warehouse position is both an adverse action and a failure to return her to an equivalent position under the FMLA.

**III.    NEW SEABURY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS TO COSGROVE'S TERMINATION.**

Finally, Cosgrove also asserts that her termination violates the law in at least three ways: (1) it constitutes retaliation for her exercise of her rights under Title VII and Chapter 151B;[8] (2) it constitutes retaliation for her request for and

---

[8]    Cosgrove also asserts that this change in her employment constitutes sex and pregnancy discrimination. The evidence of discriminatory animus has been set forth in Section I.A, *supra*, in connection with Cosgrove's claim that her original demotion was motivated by sex and pregnancy discrimination.

use of FMLA leave; and (3) it violates the FMLA's requirement that employees returning from leave be restored to the same or an equivalent position.

As discussed above, Cosgrove engaged in protected activity under both Title VII and the FMLA by sending a letter to Brennan in May 2003 and by having her attorney send Brennan another letter in September 2003. Pl.'s Fact Stmt. ¶¶ 12-15. Cosgrove's attorney also sent another letter to Brennan dated October 8, 2003, stating that New Seabury's actions in failing to return Cosgrove to her position as Administrative Assistant in the Catering Sales Department constituted unlawful retaliation and discrimination. Pl.'s Fact Stmt. ¶ 45. This final letter is also protected activity under Title VII and the FMLA. Second, there can be no dispute that Cosgrove's termination constituted adverse action. *Burns*, 334 F. Supp. 2d at 19 (Adverse action includes "discharg[e].").

Finally, there is a causal connection between Cosgrove's termination and her protected activity. As explained above, her termination occurred approximately three weeks after her attorney sent the second letter. Pl.'s Fact Stmt. ¶¶ 45, 49. "[A] showing of discharge soon after the employee engages in an activity specifically protected by . . . Title VII . . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation." *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir. 1988); *see also Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) ("[P]rotected conduct [under the FMLA] closely followed by adverse action may justify an inference of retaliatory motive.") (internal quotation marks omitted). Second, Cosgrove was given no notice of her termination—Brennan informed

her that her position was being eliminated effective that very day.  Pl.'s Fact

Stmt. ¶¶ 49-50.  Third, the warehouse scanning project was ongoing, and there

was no reason that it should end at the end of the high season.  Pl.'s Fact Stmt. ¶

41.  Finally, as discussed above, Brennan's comment to Cosgrove's co-worker

indicated he was conscious of her intention to sue New Seabury.  Pl.'s Fact Stmt.

¶¶ 47-48.[9]

## CONCLUSION

In demoting Cosgrove, then failing to restore her to her position after

maternity leave, and finally terminating her, New Seabury violated Title VII,

Chapter 151B, and the FMLA.  Cosgrove has presented evidence to defeat New

Seabury's claim that her demotion and then termination were legitimately justified

as part of a company-wide restructuring—namely, she has shown that three of

the seven permanent employees whose jobs were affected by the so-called

restructure were pregnant women, she has shown that her responsibilities were

taken over by others after her demotion, and she has presented evidence that

the position she was offered was year-round, not merely seasonal, as New

Seabury claims.  Cosgrove has also presented evidence that all of the adverse

actions that New Seabury took against her occurred shortly after her assertion of

her rights under the FMLA, Title VII, and Chapter 151B.  In light of this evidence,

New Seabury's motion for summary judgment should be denied.

---

[9]       As discussed in Plaintiff's Motion for Partial Summary Judgment, Cosgrove's termination
also violates the FMLA's substantive provision because New Seabury's placement of Cosgrove in
a seasonal position as opposed to the year-round position she had been promised does not
satisfy the FMLA's requirement that an employee returning from leave must be placed in the
same or an equivalent position.

Respectfully submitted,

PATRICIA COSGROVE,
By her attorneys,


___ s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, admitted *pro hac vice*
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108

Dated:  July 14, 2006       (617) 367-7200

## CERTIFICATE OF SERVICE

    I hereby certify that on July 14, 2006, I caused a copy of this document to be served by electronic filing on Howard I. Wilgoren, 6 Beacon Street, Suite 700, Boston, MA 02108, counsel for the defendant.


___ s/Hillary Schwab_____
Hillary Schwab, Esq.